IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MARCEL WAYNE WILLIAMS                                                    PLAINTIFF

v.                             Case No. 5:09CV00394 JLH

RAY HOBBS, Interim Director,
Arkansas Department of Correction,[1]
in his official capacity                                                 DEFENDANT

**OPINION AND ORDER**

Marcel Wayne Williams has filed a petition for writ of *habeas corpus* and complaint for declaratory and injunctive relief alleging that Arkansas's recently enacted Methods of Execution Act[2] ("MEA") violates the requirement of separation of powers in Article 4 of the Constitution of Arkansas, the due process clause of the Fourteenth Amendment to the United States Constitution, and the *ex post facto* clause in Article I, Section 10 of the United States Constitution. He brings his petition pursuant to 28 U.S.C. § 2254, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983. The State has moved to dismiss the complaint for failure to state a claim upon which relief may be granted. For the reasons stated hereinafter, the State's motion to dismiss is granted.

**I.**

On November 20, 1994, Stacy Errickson stopped at convenience store for gas. Williams approached Errickson's vehicle, drew a firearm, and forced her into the vehicle. Williams drove

---

[1] Williams named as the defendant Larry Norris, Director of the Arkansas Department of Correction, in his official capacity. Norris has since resigned, and Hobbs has been appointed as Interim Director. The Clerk is directed to correct the docket accordingly. *See* Fed. R. Civ. P. 25(d).

[2] The full title of the MEA is "An Act to Clarify the Existing Procedures for Capital Punishment by Lethal Injection; and for Other Purposes." 2009 Ark. Acts 1296. It is codified at Ark. Code Ann. § 5-4-617 (2009).

Errickson's vehicle to several automated teller machines and forced her to withdraw a total of $350. He then raped and murdered her. After police arrested Williams on an outstanding warrant on November 29, 1994, he was questioned about two other assaults on women. During the questioning, Williams confessed to abducting Errickson from the convenience store and robbing her through ATM withdrawals, but he denied any sexual assault or murder, telling the officers that to the best of his knowledge Errickson remained alive. On December 5, 1994, Stacy Errickson's body was discovered, having been buried in a shallow grave.

## II.

In January 1997 Williams was convicted of capital murder, kidnapping, rape, and aggravated robbery. He was sentenced to death by lethal injection. Williams appealed his conviction to the Arkansas Supreme Court, which affirmed in *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999). Williams filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37, which was denied. The Arkansas Supreme Court affirmed the denial of Williams's request for post-conviction relief in *Williams v. State*, 347 Ark. 371, 64 S.W.3d 709 (2002).

Williams then filed a petition for writ of *habeas corpus* in this Court, which granted the petition in part, holding that Williams had been deprived of his right to effective assistance of counsel at the sentencing phase. This Court denied the petition on all other claims. The Eighth Circuit reversed the granting of the ineffective assistance claim and affirmed the denial of Williams's remaining claims. *Williams v. Norris*, 576 F.3d 850 (8th Cir. 2009).

**III.**

In this action, Williams purports to seek *habeas* relief pursuant to 28 U.S.C. § 2254 and declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. As noted above, Williams has already brought a *habeas* petition pursuant to 28 U.S.C. § 2254. To the extent that the present action is brought pursuant to § 2254, it is premature because Williams has not obtained authorization from the Eighth Circuit to file a second or successive *habeas* petition. *See* 28 U.S.C. § 2244(b)(3)-(4); Rule 9, Rules Governing Section 2254 Cases in the United States District Courts. Nevertheless, Williams may challenge the method of execution pursuant to 42 U.S.C. § 1983. *Hill v. McDonough*, 547 U.S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006).

Williams alleges that the MEA violates his due process right to access the courts because, he says, it prevents him from ascertaining how his death sentence will be carried out, leaving him "no way to know whether his execution will comport with the Eighth Amendment's limitations on gratuitous infliction of pain and suffering." (Pet. for Writ ¶ 39.) Because he cannot obtain that information, he argues, he "lacks the factual predicate to bring a complaint under the Eighth Amendment." (*Id.*) Williams also presents an *ex post facto* claim, arguing that the MEA creates a substantial risk of increasing the pain of his execution as well as increasing his risk of mental anxiety in not knowing the procedure by which he will be put to death. Williams requests that the Court permanently enjoin the defendant from applying the MEA to him and to declare the MEA unconstitutional and invalid as applied to him.

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be true, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d

868, 884 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007)).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  A complaint is insufficient, however, if it alleges no more than enough to leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id.* at 561, 127 S. Ct. at 1968.  The facts alleged in the complaint must raise the right of relief above the speculative level.  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  The Court may grant a motion to dismiss on the basis of a dispositive issue of law.  *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989).

Arkansas has provided for the death penalty to be administered by intravenous injection of lethal drugs since 1983.  *See* Ark. Code Ann. § 5-4-617 (publisher's notes) (2009).  The lethal injection protocol is contained in Attachment C to Administrative Directive 08-28.  (Def.'s Reply to Pl.'s Mot. to Dismiss 8 n.2.)[3]  The protocol has been the subject of previous Eighth Amendment claims brought by death row inmates.  Federal courts have found Arkansas's lethal injection protocol to be constitutional.  *Nooner v. Norris*, No. 08-2978, 2010 U.S. App. LEXIS 2599 (8th Cir. Feb. 8, 2010); *Nooner v. Norris*, No. 5:06CV00110 SWW, 2008 U.S. Dist. LEXIS 60136 (E.D. Ark. Aug. 5, 2008).

As noted above, Williams contends that the MEA violates due process by suppressing information regarding how his death sentence will be carried out.  Williams contends that by suppressing such information, the State thwarts his ability to file an action to enforce his legal rights,

---

[3] Williams does not allege that the lethal injection protocol has been changed since the enactment of Administrative Directive 08-28.

4

as he has no way of knowing whether the method of his execution will comport with the Eighth Amendment's limitations on gratuitous infliction of pain and suffering.

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.' " *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 353, 116 S. Ct. 2174, 2181, 135 L. Ed. 2d 606 (1996)).

The MEA provides: "The policies and procedures for carrying out the sentence of death and any and all matters related to the policies and procedures for the sentence of death are not subject to the Freedom of Information Act of 1967, § 25-19-101 et seq., *except for the choice of chemical or chemicals that may be injected, including the quantity, method, and order of the administration of the chemical or chemicals.*" Ark. Code Ann. § 5-4-617(a)(5)(B) (emphasis added). The choice of chemical or chemicals that may be injected, including the quantity, method, and order of administration, is thus available to the public pursuant to the Arkansas Freedom of Information Act. Therefore, the information Williams needs to challenge the method of execution under the Eighth Amendment has not been suppressed by the MEA.

The lethal injection protocol has been challenged recently under the Eighth Amendment as applied to the states through the Fourteenth Amendment. *Nooner*, 2010 U.S. App. LEXIS 2599; *Nooner v. Norris*, 2008 U.S. Dist. LEXIS 60136. The protocol was filed in the public record in that case and continues to be accessible through the Case Management/Electronic Case Files (CM/ECF)

website for the United States District Court of the Eastern District of Arkansas. *Nooner*, No. 5:06CV00110 SWW (E.D. Ark) (Document #129-2, pp. 3-8; Document #137-3, pp. 15-19). The Office of the Federal Public Defender represented the inmate who brought that action, just as it represents Williams here, so Williams's attorneys obviously have access to the lethal injection protocol. Indeed, Williams's complaint describes the lethal injection protocol in terms that show that his lawyers have reviewed it. (Pet. for Writ ¶ 14).

Williams argues that the Director of the Arkansas Department of Correction might evade the FOIA by not creating a document recording the lethal injection protocol or by creating a lethal injection protocol so close to the date of execution that it cannot be discovered or challenged. He does not allege that either scenario has actually happened or that there is reason to believe that either scenario is likely to happen imminently. His allegations on this point are no more than speculation as to what might happen some day. Williams has not alleged "a sufficiently substantial risk of serious harm or a sufficiently imminent danger" to state a claim. *Clemons*, 585 F.3d at 1128. He has not alleged an actual injury, that is, that a nonfrivolous claim has been frustrated or is being impeded. *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008). The MEA on its face and as applied to Williams is not unconstitutional for suppressing information that Williams needs to determine whether the method of execution violates the due process clause. Therefore, his due process claim is dismissed.

Williams also argues that the MEA violates the *ex post facto* clause of Article I, Section 10 of the United States Constitution. The *ex post facto* clause prohibits "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with

6

crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2715, 2719, 111 L. Ed. 2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169, 46 S. Ct. 68, 68, 70 L. Ed. 216 (1925)). Williams alleges that the MEA, by repealing a requirement that lethal injection be preceded by anesthesia, creates a risk that his execution will be more painful than it would have been if governed by the law in effect when he committed his crimes. Williams also alleges that, by keeping secret the method by which he will be executed, there is a risk that his execution will be more painful than it would have been if it had been carried out by the law that had previously been in place and a risk that he will endure mental anxiety regarding how he will be executed and the pain involved.

Williams's *ex post facto* claim again relies upon his false conclusion that the MEA prohibits him from ascertaining the method of his execution. As noted above, the MEA makes available to the public through the FOIA the "choice of chemical or chemicals that may be injected, including the quantity, method, and order of the administration of the chemical or chemicals." § 5-4-617(a)(5)(B). Furthermore, as previously noted, Williams has access to Arkansas' lethal injection protocol through the files of this Court. Again, Williams does not allege that the lethal injection protocol has been changed since the passing of the MEA. He does not allege that the lethal injection protocol fails to include anesthesia.

The MEA does not punish an action that was innocent when committed, nor does it make the punishment more burdensome. Viewing the complaint in the light most favorable to him, Williams merely speculates that some day the protocol might be changed to make the punishment more burdensome. Such speculation as to what may happen some day is inadequate to state a claim for relief. Therefore, Williams's *ex post facto* claim is dismissed.

Because the Court has jurisdiction over Williams's federal claims under § 1983, the Court has the authority to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ."). A district court may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if the district court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Out of respect for the principles of federalism and for the courts of the State of Arkansas, the Court will exercise its discretion under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction with respect to Williams's state-law claims. *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7, 98 L. Ed. 2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that the district court should have declined pendant jurisdiction after dismissing the federal claims because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions"). Here, those concerns for deference and comity to the state courts are even more compelling because the state-law issue that Williams raises is whether the MEA violates the separation-of-powers doctrine contained in the Arkansas Constitution. That issue should be decided by the Arkansas courts, not by the federal courts.

## CONCLUSION

For the reasons stated, the State's motion to dismiss is GRANTED. Document #12. Williams's claims under 28 U.S.C. § 2254 are dismissed without prejudice because Williams has not obtained authorization from the United States Court of Appeals for the Eighth Circuit to file a second or successive *habeas* petition. Williams's claims under 42 U.S.C. § 1983 are dismissed without prejudice for failure to state a claim upon which relief may be granted. The Court declines to exercise supplemental jurisdiction over Williams's claim that the MEA violates Article 4 of the Arkansas Constitution, so that claim is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). The remaining pending motions are DENIED as moot. Document #15, Motion to Expedite Schedule by Williams; Document #5, Motion to Intervene by Jack Harold Jones, Jr.; Document #6, Motion for Leave to Proceed in *Forma Pauperis* by Jack Harold Jones, Jr.; and Document #18, Motion to Intervene by Don W. Davis.[4]

IT IS SO ORDERED this 2nd day of March, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[4] *See Clemons*, 585 F.3d at 1129 (a district court may deny a prisoner's motion to intervene when granting judgment on the pleadings because there is no longer a case in which to intervene).